

**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Lauren Burke
_____
Plaintiff

Mervis Diamond Importers, Inc.,
and
Ronald Mervis, in his Individual and Corp. Capacity
_____
Defendant

Case Number  2016 CA 000749 B

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kevin E. Byrnes, Esq
Name of Plaintiff's Attorney

1455 Pennsylvania Ave. NW.,
Address
Washington, DC 20004

202-599-9991
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date March 9, 2016

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**GROUP EXHIBIT 1**

FORM SUMMONS - Jan. 2011                                                                                             CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Lauren Burke　　　　　　　　　　　　　　　　Case Number: _____

vs　　　　　　　　　　　　　　　　　　　　　Date: February 1, 2016

Mervis Diamonds & Ronald (Ronnie) Mervis　　☒ One of the defendants is being sued in their official capacity.

| Name: (Please Print) Kevin E. Byrnes, Esq | Relationship to Lawsuit |
|---|---|
| Firm Name: Law Offices of Kevin Byrnes, PLLC | ☒ Attorney for Plaintiff |
| Telephone No.: 202-599-9991　　Six digit Unified Bar No.: 480195 | ☐ Self (Pro Se) ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury　　☒ 6 Person Jury　　☐ 12 Person Jury

Demand: $ 2,000,000　　　　　　　　　　　　Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____　　Judge: _____　　Calendar #: _____

Case No.: _____　　Judge: _____　　Calendar #: _____

---

NATURE OF SUIT:　　(Check One Box Only)

**A. CONTRACTS**　　　　　　　　COLLECTION CASES

☐ 01 Breach of Contract　　　　☐ 14 Under $25,000 Pltf. Grants Consent　　☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty　　　　☐ 17 OVER $25,000 Pltf. Grants Consent　　☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument　　　☐ 27 Insurance/Subrogation　　　　　　　　☐ 26 Insurance/Subrogation
☐ 07 Personal Property　　　　　　　　Over $25,000 Pltf. Grants Consent　　　　Over $25,000 Consent Denied
☒ 13 Employment Discrimination　☐ 07 Insurance/Subrogation　　　　　　　　☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees　　　　　　Under $25,000 Pltf. Grants Consent　　　Under $25,000 Consent Denied
　　　　　　　　　　　　　　　　☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile　　　　☐ 03 Destruction of Private Property　　☐ 05 Trespass
☐ 02 Conversion　　　　☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process　　　　　　☐ 10 Invasion of Privacy　　　　　　☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 02 Alienation of Affection　　　☐ 11 Libel and Slander　　　　　　☐ 18 Wrongful Death (Not Malpractice)
☐ 03 Assault and Battery　　　　　☐ 12 Malicious Interference　　　　☐ 19 Wrongful Eviction
☐ 04 Automobile- Personal Injury　☐ 13 Malicious Prosecution　　　　☐ 20 Friendly Suit
☐ 05 Deceit (Misrepresentation)　　☐ 14 Malpractice Legal　　　　　　☐ 21 Asbestos
☐ 06 False Accusation　　　　　　☐ 15 Malpractice Medical (Including Wrongful Death)　☐ 22 Toxic/Mass Torts
☐ 07 False Arrest　　　　　　　　☐ 16 Negligence- (Not Automobile, Not Malpractice)　☐ 23 Tobacco
☐ 08 Fraud　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE　　☐ IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code § 42-3301, et seq.)
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)
- ☐ 21 Petition for Subpoena [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1) (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)
- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_Kevin Byrnes_          February 1, 2016
Attorney's Signature          Date

Filed
D.C. Superior Court
02/02/2016 11:85AM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| LAUREN BURKE<br>5335 Wisconsin Avenue, NW<br>Suite 600<br>Washington, DC 20015 Plaintiff,<br><br>v.<br><br>MERVIS DIAMOND<br>IMPORTERS, INC.,<br>1900 Mervis Way<br>Tysons, VA 22182    and<br><br>RONALD MERVIS, in his<br>Individual and corporate capacity,<br>8440 Bradley Blvd.<br>Bethesda, MD 20817<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 2016 CA 000749 B<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT AND DEMAND FOR JURY TRIAL

INTRODUCTION

1. This action arises under the District of Columbia's Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11 based on sexual harassment and discrimination retaliation and reprisal based on gender.

2. Plaintiff alleges that Defendant Ronald (Ronnie) Mervis, in both his individual and corporate capacities engaged in a severe and pervasive pattern of sexual harassment, which resulted in the retaliatory termination of Plaintiff when she resisted his actions. The actions involved physical battery, the creation of a hostile work environment and a retaliatory discharge after Plaintiff resisted Mr. Mervis' advances.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this civil action under the DCHRA, D.C. Code § 2-1404.01 *et seq.* Additionally, the Plaintiff resides in the District of Columbia.

4. Jurisdiction also lies in the District of Columbia because the physical assaults occurred in the District of Columbia and the retaliation discharge was part of the overall pattern of sexual harassment as well as a separate act of discrimination.

## PARTIES

5. **Plaintiff Lauren Burke** ("Burke") is a resident of the District of Columbia at all these relevant to this complaint she was employed by Mervis Diamond Importers, Inc. in the District of Columbia, Virginia, and Maryland offices.

6. **Defendant Mervis Diamond Importers, Inc.** ("Mervis Diamonds") is, on information and belief, a Virginia based corporation, with headquarters located in McClean, Virginia at Tysons Corner.

7. **Defendant Ronald Mervis** ("Mr. Mervis") is, on information and belief, is a citizen of the State of Maryland. At all times relevant to this complaint he was an owner and the principal executive officer of Mervis Diamonds.

## FACTS

8. On January 12, 2014, Burke accepted an offer of employment with Mr. Mervis Diamonds to serve as Customer Relations Director.

9. Mervis Diamonds is, on information and belief, owned jointly by Defendant Ronnie Mervis and his brother Zelman Mervis. On information and belief, the brothers share ownership, although Defendant Mervis is the Chief Executive Officer and day-to-day manager of the Mervis Diamond Store.

2

10. Mervis Diamonds is believed to have three stores: one in Tysons, VA; one in Washington, D.C.; and one in Rockville, MD.

11. The Washington, D.C. store is located at 1700 K Street, NW ("K Street Store").

12. Burke is and was, at all times relevant to this complaint, a resident of the District of Columbia.

13. Upon starting her employment, Burke was assigned to perform duties for all three Mervis Diamond stores. However, as detailed below, most of the incidents identified in this complaint arose in the District of Columbia.

14. Between January and February 2015, Burke conducted sales analysis, budget reviews and focused on the database integrity at all three offices.

15. Mr. Mervis would also travel between all three stores weekly between Virginia, Maryland, and D.C. locations.

16. Mr. Mervis began insisting that Burke personally accompany him to the various stores, ostensibly for business purposes.

17. However, beginning in February 2015 and continuing until the date of her termination, Burke was subjected to a continuous stream of sexually charged comments from Mr. Mervis.

18. In February 2015, Mr. Mervis, while accompanying Burke to the K Street Store, commented to her that he wanted her to wear shorter skirts to work and that she should not wear panty hose. Mr. Mervis also told her to wear high heels and to make sure to show off her legs.

19. Burke attempted to deflect the comment by claiming it was too cold outside to wear skirts and that high heels would hurt her legs.

20. In February 2015, Mr. Mervis began asking Burke about her sex life. He wanted to know who she was sleeping with and asked her what she liked to do "in bed," who was she sleeping with, and how often was she having sex.

21. Mr. Mervis repeatedly asked Burke if she had "sexy pictures" of herself, pictures of herself in the nude or in sexual situations.

22. Burke informed Mr. Mervis such comments were "completely inappropriate."

23. Mr. Mervis would change the subject but would return to the subject within a few days.

24. In March 2015, Burke celebrated her thirty second birthday. Shortly thereafter, Mr. Mervis began asking Burke to "ride with him." Mr. Mervis would claim he was going to visit the stores, but instead would take her on "errands" to a Lexus dealership in Maryland, to see his accountant and to restaurants.

25. Burke repeatedly asked Mr. Mervis to focus on business matters, but as March progressed into April, Mr. Mervis became more forceful in his comments and his actions.

26. During rides, Mr. Mervis would touch Burke's legs and try to pat her upper thigh. Burke told Mr. Mervis to stop but he instead became bolder.

27. Mr. Mervis also asked Burke to go out with him after work. On Thursday afternoons, Mr. Mervis and Burke would be at the K Street Store. After closing, Mr. Mervis asked Burke to accompany him for drinks. The first time Burke went out with Mr. Mervis she advised him she could go for only a few minutes and that she would not consume alcohol.

28. Mr. Mervis used the opportunity to discuss his younger personal trainer and how sexually attractive she was. Mr. Mervis commented that he liked to be around pretty women. Burke left soon after.

29. In April 2015, Mr. Mervis, while in the District of Columbia, asked Burke to again accompany him after work. Burke was hesitant, but Mr. Mervis stated the second meeting would focus solely on business.

30. Mr. Mervis consumed several drinks and then asked Burke if she had any nice pictures of herself. Burke was offended and told him she was leaving and did so.

31. Throughout April and May 2015, Mr. Mervis continued to harass Burke and create a sexually charged and hostile work environment.

32. Mr. Mervis had directed Burke to stay with him at prolonged meetings on Fridays in the Tysons Office that lasted hours (typically four hours or longer). At these "meetings," Burke was the only person involved. During these meetings, Mr. Mervis constantly commented on Burke's appearance and would ask her about her sex life. He would also try to close the distance between them.

33. Burke complained about the lack of any business angle to the meetings.

34. Burke began withdrawing from personal discussions; she refused to ride in the car with him; rejected Mr. Mervis outside of work; and began sending emails.

35. Burke became physically and emotionally distraught and began to lose sleep, lost nearly twenty pounds, and began trying to avoid working in the same location as Mr. Mervis on Fridays. Burke also became agitated and fearful as Fridays approached.

36. Burke never received any performance reviews; Mr. Mervis never criticized her work nor did he counsel her on any conduct or performance issues.

37. On June 12, 2015, Mr. Mervis called another Friday meeting. At the time, Burke had checked the financials for the company and determined that profitability had improved by over thirty percent for the month of June.

38. At the meeting, Mr. Mervis repeatedly moved his chair closer to Burke. Burke moved away until Mr. Mervis grabbed her chair and pulled her directly alongside of him. He then grabbed Burke's arm and put his hand on her thigh.

39. Burke jumped up and said "We are done here," and walked out of the meeting.

40. On the following Monday, June 15, 2015 at 4 p.m., Mr. Mervis called Burke into his office in Tysons, Virginia. He informed Burke that she was not "working out." Mr. Mervis then attempted to force her to sign a release. Burke refused. Mr. Mervis' son, Jonathan Mervis was present, but did not say or do anything.

41. Burke filed a complaint with the D.C. Human Rights Commission, which was withdrawn.

## COUNT I
### (Sexual Harassment in Violation of the DCHRA)

42. Paragraphs 1-41 are realleged and incorporated by reference as if fully set forth herein.

43. The District of Columbia Human Rights Act (DCHRA) prohibits discrimination based on sex. DC Code §2-1401.11.

44. The Act prohibits the discharge of any employee in any manner that would adversely affect their status as an employee.

45. The Act also prohibits retaliation and coercion, that is any act to coerce, threaten or retaliate against or otherwise interfere with any person assisting any right under the DCHRA.

46. Sexual harassment is a form of prohibited conduct under the Act.

47. It is unlawful for an employer to engage in conduct that amounts to the harassment of an individual based on their sex.

48. It is unlawful for an employer to condition employment based on sex, including requiring employees or suggesting to employees that they dress in a way designed to appeal to the prurient interest of their employer or to make their appearance more sexually provocative.

49. It is unlawful for an employer to create a hostile work environment, which alters the condition of the employee's employment or impacts on the ability of the employee to perform employment free from an environment continence sexually charged comments.

50. It is unlawful for an employer to make sexual advances in the workplace.

51. It is unlawful for the employer to comment on an employee's sex life, to request sexual imaginary from the employee or to touch the employee in a sexually provocative way.

52. Mr. Mervis repeatedly and despite numerous demands from Burke for him to curb his behavior, engaged in conduct that was discriminatory and created a work environment that was hostile towards Burke based on her gender as a female.

53. Mr. Mervis also repeatedly conditioned the work environment, on Burkes' appearance demanding that she wear short skirts and high heels, commenting on her legs and physique, requesting that she wear tighter clothing and asked her to dress in a more "sexy" fashion.

54. Mr. Mervis also assigned Burke her work assignments so as to isolate her. He demanded she ride with him and that she participate in meetings alone with him so that he could isolate her and subject her to sexually charged comments and behavior.

55. Mr. Mervis solicited Burke to join him after work and tried to induce her to consume alcohol and engaged in sexual banter with her.

56. Mr. Mervis further violated the DCHRA when he engaged in repeated offensive touching of Burkes' person.

57. Mr. Mervis often touched Burke on her upper thigh or legs, touched her on her back and shoulders or brushed up against her in an over familiar way.

58. These actions were acts of discrimination and part of an overall hostile work environment that demeaned and degraded Burke, causing her severe emotional destress.

59. As a result of the sexual harassment Burke is entitled to compensatory damages and damages based on the pain and suffering and emotional distress.

60. At all times Mr. Mervis was aware that Burke was resisting his harassing conduct.

61. As the principal of Mervis Diamonds, Mr. Mervis was aware that Burke had no realistic mechanism for complaining about his conduct.

62. Mr. Mervis, as the owner, knew Burke was vulnerable to his advances because he had the actual power to hire or fire her or change her conditions of employment.

63. Mr. Mervis also knew that within his company, any denial of sexually inappropriate conduct by him would be believed.

64. Mr. Mervis and Mervis Diamonds are liable jointly and independently and Mr. Mervis is liable both in his individual and corporate capacities.

65. Burke seeks damages in the amount of $500,000.

66. The actions of Mr. Mervis were extreme and outrageous and warrant the imposition of punitive damages in the amount of $1,500,000 based on the nature of the sexual harassment in the workplace.

## COUNT II
### (Violation of DCHRA Based on Hostile Work Environment)

67. Paragraphs 1-66 are realleged and incorporated by reference as if fully set forth herein.

8

68. The conduct of Mr. Mervis created a severe, pervasive hostile work environment for Burke, who was subjected to almost daily harassment and intimidation based on sex.

69. Burke was subject to a demeaning work environment where she was judged by her sex, her appearance and her perceived sexual deducibility.

70. Mr. Mervis referred to Burke as "Legs". He repeatedly asked her to share details about her life, sexually explicit pictures and placed in her in positions of vulnerability by putting her in situations where he was alone with her.

71. Mr. Mervis repeatedly touched Burke inappropriately and caused her to change her habits and dress to try to avoid his overtures.

72. Burke was so severely impacted by the environment that she lost substantial weight, lost sleep, became nervous, aggregation and suffered severe anxiety.

73. Burke seeks $500,000 in damages for emotional distress and pain and suffering. Given the outrageous, severe, intentional and pervasive nature of the conduct, Burke seeks $1,500,000 in punitive damages.

## COUNT III
### (Discrimination and Violation of the DCHRA Wrongful Termination in Retaliation for Assertion of Protected Rights)

74. Paragraphs 1-73 are realleged and incorporated by reference as if fully set forth herein.

75. On June 15, 2015, Mr. Mervis terminated Burke after she had protested him committing sexual battery on June 12, 2015.

76. The termination was directly and proximately caused by Mr. Mervis being rebuffed by Burke on June 12, 2015.

77. June 15, 2015 was a Monday, therefore the termination occurred on the next business day after Mr. Mervis had battered Burke by placing his hand on her upper thigh and pulling her close to him.

78. The termination was not only an act of sexual discrimination and continued expression of the hostile work environment, but an act of retaliation and reprisal for Burke's refusal to tolerate Mr. Mervis' behavior.

79. Burke is entitled to both pay, front pay, damages for pain and suffering and emotional distress in the amount of $500,000 and because the conduct was extreme, outrageous and intentional to punitive damages in the amount of $1,500,000.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

80. Paragraphs 1-79 are realleged and incorporated by reference as if fully set forth herein.

81. District of Columbia law recognizes the tort of intentioned infliction of emotional distress.

82. The tort will be where the conduct is extreme and outrageous and is intentionally or recklessly designed to cause severe emotional distress.

83. Sexual battery and harassment allow for claim of Intentional Infliction of Emotional Distress. *King v. Kidd*, 640 A.2d 656, 667 (D.C. 1993).

84. Mr. Mervis conducted sexual battering on Burke on repeated occasions, creating a hostile work environment and then terminating her when she protested. His conduct is so extremely outrageous and of such a nature that they shock the conscience since they it was designed to, and did, cause Burke severe emotional distress.

85. As a direct and proximate result of the Mr. Mervis' extreme, outrageous and malicious conduct, Burke was caused to suffer, among other things, but not limited to, severe mental distress, anxiety and nervousness.

86. The fact that Mr. Mervis continued to act with such intent and after repeated protests from Burke, clearly establishes the tort.

87. Mr. Mervis is liable on his personal capacity for engaging in reckless intentional acts that were designed to inflict emotional distress and which did in fact inflect such distress.

88. Burke seeks $500,000 in compensatory and $1,500,000 in punitive damages for Mr. Mervis' conduct.

## COUNT V
### (Battery)

89. Paragraphs 1-88 are realleged and incorporated by reference as if fully set forth herein.

90. Mr. Mervis' conduct of offensively touching Burke in an unwelcomed and unconsented matter amounts to battery under District of Columbia law.

91. A battery occurs whenever a person engages in an intentional act that involves a harmful or offensive bodily contact.

92. On numerous occasions, including on June 12, 2015, Mr. Mervis placed his hands on Burkes person in a manner that was highly offensive.

93. Burke repeatedly advised Mr. Mervis that she did not wish to be touched by him.

94. Mr. Mervis repeatedly patted or placed his hands on Burke's legs, thighs, back and shoulders, and grabbed her by the arm to pull her closer to him.

95. The touching caused Burke extreme emotional distress and undermined her sense of safety in the workplace.

96. Mr. Mervis was fully aware that his conduct was unwelcomed and offensive. Burke repeatedly asked him not to touch her and rebuffed his sexually based comments.

97. Mr. Mervis knew, that as the principal and highest official of her employer, Burke was in a vulnerable position and that she had no place to complain.

98. Further, Mr. Mervis chose to engage in the offensive touching when Burke was alone with him, thereby depriving her of witnesses to the conduct.

99. Mr. Mervis' actions were calculated, intentional, and malicious.

100. Mr. Mervis knew that he had the power to direct Burke to meet with him alone and he took advantage of that authority.

101. Burke seeks $500,000 in damages for the battery including for pain and suffering and emotional distress.

102. Since the conduct was extreme and outrageous, Burke also seeks $1,500,000 in punitive damages.

WHEREFORE, Burke seeks damages as defined above, injunctive relief, attorney fees and costs as allowed by the statute under the DCHRA, or as authorized by the court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of this matter.

Respectfully Submitted,

Kevin Byrnes (DC Bar No. 480195)
Law Offices of Kevin Byrnes
1455 Pennsylvania Ave, NW, Ste. 461
Washington, DC 20004
202-599-9991 (Telephone)
kevinb@kbyrneslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February 2016, I have caused a copy of the foregoing to be served, by mail, on counsel for Defendant as follows:

Morris Kletzkin, Esquire
FRIEDLANDER MISLER PLLC
5335 Wisconsin Avenue, NW., Ste. 600
Washington, DC 20015
*Counsel for Defendant*

*Kevin E. Byrnes*
Counsel for Plaintiff



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

LAUREN BURKE
    Vs.                                          C.A. No.    2016 CA 000749 B
MERVIS DIAMONDS IMPORTERS, INC. et al

## INITIAL ORDER AND ADDENDUM

      Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

      (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

      (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

      (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

      (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

      (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

      (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                                       Chief Judge Lee F. Satterfield

Case Assigned to: Judge ALFRED S IRVING JR
Date: February 2, 2016
Initial Conference: 9:30 am, Friday, May 13, 2016
Location: Courtroom 415
         500 Indiana Avenue N.W.

                                                                                                    Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

LAUREN BURKE
  Vs.                                             C.A. No.     2016 CA 000749 B
MERVIS DIAMONDS IMPORTERS, INC. et al

### INITIAL ORDER AND ADDENDUM

   Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

   (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

   (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

   (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

   (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

   (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

   (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                              Chief Judge Lee F. Satterfield

Case Assigned to: Judge ALFRED S IRVING JR
Date:  February 2, 2016
Initial Conference: 9:30 am, Friday, May 13, 2016
Location:  Courtroom 415
           500 Indiana Avenue N.W.

                                                                      Caio.doc

**ADDENDUM TO INITIAL ORDER AFFECTING
ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc